**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| **ERICA L. E.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:20-cv-514** |
| ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## REPORT AND RECOMMENDATION

Plaintiff Erica L.E. ("Plaintiff") filed this action pursuant to 42 U.S.C. 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 12.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 16, 18. Plaintiff argues that the ALJ erred in finding that Plaintiff is "not disabled" because the ALJ failed to properly weigh the opinion of Plaintiff's treating physician. ECF No. 17 at 1.

After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following

reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 16, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 18, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I.  PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on June 20, 2016, and January 30, 2017, respectively, alleging disability due to chronic neck and back pain, bulging disc, degenerative disc disease, stenosis, dextrocurvature apex, cervicalgia, chronic musculoskeletal, muscle spasm, and limited ability to move her neck and back.  R. at 108–09, 118–19.[1]  Plaintiff's applications were initially denied on June 2, 2017, and again denied upon reconsideration on June 14, 2018.  R. at 152, 154.  On August 8, 2018, Plaintiff requested a hearing before an administrative law judge.  R. at 188.

A hearing was held on December 30, 2019, at which Plaintiff appeared with counsel before Administrative Law Judge Charles A. Dominick ("the ALJ").  R. at 59–107.  Both Plaintiff and an impartial vocational expert ("VE") testified at the hearing.  R. at 59–107.  On February 5, 2020, the ALJ issued a decision finding Plaintiff not disabled.  R. at 10–18.  Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on August 15, 2020, making the ALJ's decision the final decision of the Commissioner.  R. at 1–3.

Having exhausted her administrative remedies, on October 12, 2020, Plaintiff filed a Complaint for judicial review of the Commissioner's decision.  ECF No. 1.  On June 8, 2021, Plaintiff filed a motion for summary judgment and accompanying memorandum in support.  ECF Nos. 16, 17.  On July 8, 2021, the Commissioner filed a cross motion for summary judgment and

---

[1] "R." refers to the certified administrative record that was filed under seal on March 4, 2021, ECF No. 11, pursuant to Local Civil Rules 5(B) and 7(C)(1).

memorandum in support.  ECF Nos. 18, 19.  Plaintiff filed a reply.  ECF No. 20.  Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. <u>RELEVANT FACTUAL BACKGROUND</u>

The Record included the following factual background for the ALJ to review:

Plaintiff was thirty-four years old at the time of her alleged disability onset date of August 3, 2014.  R. at 108.  As of the date of the hearing, Plaintiff lived with her husband and son, and was attending community college for radiology.  R. at 66–67.  Plaintiff last worked as a clerk at Hampton Roads Transit, and as a quality assurance clerk at FedEx.  R. at 16, 70.

### A. Plaintiff's Medical Records Relevant to Alleged Physical Impairments

Plaintiff presented to Sentara Virginia Beach General Hospital on June 5, 2014, two days after she was in a low speed motor vehicle accident.  R. at 441.  Upon examination, Plaintiff was not in distress, and was able to ambulate normally and without assistance.  R. at 442.  An x-ray of Plaintiff's thoracic spine demonstrated an acute compression fracture but no bone destruction and no significant disc space narrowing.  R. at 441.  A CT scan of Plaintiff's cervical spine showed "flexion deformity of the vertebral column" but noted that that was "most likely secondary to positioning or muscle spasm" and otherwise the scan was normal.  R. at 443.  A CT scan of Plaintiff's skull was similarly normal.  R. at 443.  Later, in September 2014 an MRI of Plaintiff's cervical spine demonstrated mild cervical degenerative disc disease and facet arthropathy, but no acute abnormalities and no significant spinal canal or neural foramen stenosis.  R. at 429.

In October 2014, Plaintiff returned to the emergency room because she was experiencing neck and back pain.  R. at 437–38.  There, Plaintiff's provider noted that she has chronic back pain and after reviewing the imaging results from June 2014, noted a possible compression fracture of the thoracic spine.  R. at 437.  Plaintiff was prescribed pain medication.  R. at 437.  A week later,

3

Plaintiff returned to the emergency department because her pain had not improved.  R. at 434. While there, Plaintiff reported having gait issues and experiencing falls.  R. at 435.  However, Plaintiff was observed ambulating without difficulty and with full range of motion, and upon physical exam, Plaintiff's gait was normal.  R. at 434, 436.  Plaintiff was instructed to follow up with pain management.  R. at 434.

Plaintiff began physical therapy at Leigh Therapy Center in January 2015.  There, she reported bilateral pain in the cervical spine which radiated into her shoulders, lower back, and lower extremities.  R. at 429.  Plaintiff continued physical therapy throughout 2015.  R. at 29, 426, 424.  By March 2015, Plaintiff reported that she was still experiencing pain with stooping and cleaning her bathroom, but that cooking and washing dishes did not cause her pain.  R. at 386–87.

Imaging of Plaintiff's lumbar spine in February 2015 demonstrated mild curvature of the lumbar spine, and discontinuity of the left transverse process of the L1 disc.  R. at 473.  An MRI of Plaintiff's lumbar spine in April 2015 demonstrated mild protrusion at the L4-L5 disc.  R. at 470.  More significantly, at the L5-S1 disc, the MRI demonstrated disc desiccation, mild loss of height posteriorly, mild overlying broad-based disc protrusion with broad-based central annular tear . . . ," moderate right foraminal stenosis with contact of the right L5 nerve root in the foramen, and moderate to severe left foraminal stenosis with deformation of the left L5 nerve root.  R. at 471.  It was noted that the findings at the L5-S1 were most likely to be symptomatic.  R. at 338, 471, 549.

Plaintiff's primary care physician, Dr. Tarik A. Phillip, with Bon Secours Town Center Medical Associates ("Bon Secours"), treated Plaintiff after her motor vehicle accident in June 2014.  *See e.g.*, R. at 545, 556, 580.  Dr. Phillip encouraged Plaintiff to continue with physical therapy, but expressed that Plaintiff may never fully be without pain.  R. at 550, 555, 580.  Dr.

Phillip also referred Plaintiff to pain management. *See* R. at 553. Upon physical examination in 2015, Dr. Phillip frequently reported that Plaintiff appeared without distress, and demonstrated full strength in her upper and lower extremities. *See, e.g.*, R. at 543, 549, 539, 535, 532–33, 527. Although Plaintiff did have some limited range of motion in her back and some tenderness, other exams showed that she had a full range of motion, and that she felt some improvement in her pain with her pain management regime. *See e.g.*, R. at 531, 541, 543, 549 549, 555.

In October 2016, Plaintiff began physical therapy with Dominion Physical Therapy. R. at 346. Plaintiff exhibited tenderness and tightness during her visits, and on December 12, 2016, Plaintiff's physical therapist noted she was making gains. R. at 349–53. Towards the end of Plaintiff's treatment, she noted that she had been walking more, and that her pain was "not too bad." R. at 353.

Plaintiff began treatment with Tracey Pennington, M.D., for pain management in September 2016. R. at 753. Upon physical examination, Dr. Pennington noted Plaintiff experienced tenderness in her shoulder and cervical spine, but her straight-leg raise tests were negative, and Plaintiff demonstrated no lower extremity weakness and no antalgic gait. R. at 751. Plaintiff reported that her medication allowed her to better tolerate her activities of daily living and improved her quality of life. R. at 710, 720, 724, 731, 743. Although Plaintiff stated she still experienced pain, she reported that her pain was relieved with walking. R. at 717, 743. Later in 2017, Plaintiff continued to report some pain and tenderness, but Plaintiff's physical exams continued to demonstrate negative straight-leg raise tests, no weakness, and normal gait. R. at 740, 734. Dr. Pennington prescribed Plaintiff pain medication and recommended physical therapy. R. at 715, 735, 741, 752. Plaintiff reported that her symptoms were controlled with medication. R. at 711, 724, 731. Eventually, Dr. Pennington referred Plaintiff to a neurosurgeon. R. at 729.

An MRI of Plaintiff's lumbar spine in June 2017 demonstrated marginal change at the L5-S1 disc, and specifically, "small central disc excision with annular tear," and "disc bulge and facet arthropathy," resulting in left foraminal stenosis. R. at 714. An MRI of Plaintiff's cervical spine at the same time demonstrated minimal degenerative changes at the C5-C6 level. R. at 714.

In 2018, Plaintiff saw Nelson Sarino, M.D., at Bon Secours for a pain management referral. R. at 763–814. Dr. Sarino referred Plaintiff to pain management, R. at 764, but Plaintiff returned to Dr. Sarino for an opioid prescription refill. R. at 787, 792. Upon examination, Plaintiff generally appeared alert and oriented. R. at 787, 792, 808.

Plaintiff treated with Atlantic Pain Interventions and Rehabilitation for pain management in 2018 and 2019. R. at 862. Upon physical examination, Plaintiff appeared with a normal gait, no limp, and ambulating without an assistive device. R. at 822, 825, 863, 891. During physical examinations, Plaintiff had tenderness in her lumbar spine, and a positive Patrick-Fabere test. R. at 832, 849, 852, 855, 864. However, Plaintiff demonstrated full strength and had a negative straight leg raise test. R. at 832, 849, 852, 855, 864, 891. Plaintiff received injections in the sacroiliac joint to manage her pain, which she reported helped her symptoms some. R. at 855, 851, 883.

**B. Relevant Opinion Evidence**

At the initial level of review, state agency consultant Eugene Noland, M.D., opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand, walk, or sit for about six hours in an eight-hour work day. R. at 113, 123. He also opined that Plaintiff could occasionally climb ramps, stairs, ladders, or scaffolds, occasionally stoop, kneel, crouch, and crawl, and frequently balance. R. at 113–14, 123–24. Ultimately, Dr. Noland found that Plaintiff should be able to perform some level of light work. R. at 114, 124.

6

At the reconsideration level of review, state agency consultant Robert McGuffin, M.D., opined that Plaintiff could: occasionally lift or carry less than ten pounds; frequently lift or carry less than ten pounds; stand, walk, or sit about six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; and frequently balance. R. at 136–37, 147–48.  Dr. McGuffin also stated that Plaintiff should be able to perform some level of light work, and explained that due to Plaintiff's spine pain, and limited [range of motion] and tenderness in her shoulders, Plaintiff "should be limited to limited light work in order to limit the max lifting to 10lbs…[Plaintiff] does not have any apparent limitation to her shoulder [range of motion] and has a normal gait." R. at 138, 149.  Nonetheless, Dr. McGuffin concluded that Plaintiff demonstrated the maximum sustained work capability for sedentary work. R. at 139, 150.

On July 6, 2019, Dr. Amira Elhassan ("Dr. Elhassan") completed a medical source statement form where she indicated that Plaintiff experienced chronic back and neck pain, and exhibited symptoms of lower back pain, neck pain, shoulder pain, and muscle spasms.  R. at 866. Dr. Elhassan denoted with a check mark that Plaintiff could rarely lift and carry less than ten pounds, and could only sit, and stand/walk less than two hours in an eight-hour workday.  R. at 866.  Dr. Elhassan also noted that it was medically necessary for Plaintiff to ambulate with a cane or other assistive device, "as needed." R. at 866.  Finally, Dr. Elhassan noted that Plaintiff would be absent from work four or more days per month as a result of her pain and medical problems. R. at 866.

### C.  Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified that she began to experience chronic pain approximately six months after she was involved in a motor vehicle accident.  R. at 78–79.  She

explained that she experienced pain in her shoulders, scapula area, lumbar, and gluteus. R. at 80. Plaintiff stated that she takes Gabapentin and Neurontin, which help her lower back pain some, but not her neck pain. R. at 81–82.

In discussing her functional abilities, Plaintiff stated that she cannot lift a five-pound bag because it pulls on her neck and shoulders. R. at 80. She further stated that she can stand on her feet for about fifteen minutes before she needs to take a break, and that her pain increases if she sits or stands for too long. R. at 82–84. Plaintiff stated that her pain makes it difficult to concentrate, shower, and sleep at night. R. at 86–87. Plaintiff testified that her physical therapy has made her pain worse, and she has a decreased range of motion in her neck and lower back. R. at 89.

As for her use of an assistive device, Plaintiff testified that she uses a cane when she goes to the stores because it helps her balance, and that she has fallen in the past. R. at 93–94. Plaintiff stated that she was not prescribed the cane. R. at 98.

## III. <u>THE ALJ'S DECISION</u>

The ALJ conducts a five-step sequential evaluation process to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments.  §§ 404.1545(a), 416.945(a).  At step four, the ALJ considers whether the claimant can still perform past relevant work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, at step five, the ALJ considers whether the claimant can perform other work.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four.  *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014).  The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five.  *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of August 3, 2014.  R. at 12.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine and degenerative disc disease/spondylosis of the lumbar spine. R at 12.  At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  R. at 13.

After step three, the ALJ determined that Plaintiff had the residual functional capacity

("RFC") to perform sedentary work, with the following limitations:

> [Plaintiff] is limited to occasional balancing, stooping, kneeling crouching, and
> climbing on ramps and stairs, but never crawling and never climbing on ladders
> ropes, or scaffolds. The [Plaintiff] must avoid unprotected heights and dangerous
> moving machinery. The [Plaintiff] must avoid overhead reaching with the bilateral
> upper extremities. The [Plaintiff] is limited to no more than frequent reaching in
> all other directions with the bilateral upper extremities. The [Plaintiff] is limited to
> no more than occasional use of foot controls.

R. at 13. In making this determination, the ALJ considered "all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence," based on the requirements of 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p. R.

at 13. The ALJ also considered the medical opinion evidence in accordance with 20 C.F.R. §§

1527, 916.927.

At step four, the ALJ determined that Plaintiff was incapable of performing her past

relevant work as an order clerk and transit clerk, which are both considered semi-skilled work at

the sedentary exertional level. R. at 16. While Plaintiff cannot resume her prior employment, the

ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers

in the national economy. R. at 16–17. Relying on the vocational expert's testimony, the ALJ

concluded that under Plaintiff's stated residual functional capacity, Plaintiff could perform the

representative occupations of a receptionist, information clerk, or system monitor. R. at 17.

Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date,

August 3, 2014, through the date of the decision, February 5, 2020. R. at 17–18.

## IV. **STANDARD OF REVIEW**

Under the Social Security Act, the Court's review of the Commissioner's final decision is

limited to determining whether the decision was supported by substantial evidence in the record

and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises a single challenge to the ALJ's decision. Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion of Dr. Elhassan, who Plaintiff alleges is a treating physician. ECF No. 17 at 10–14. In response, the Commissioner argues that the ALJ properly evaluated Dr. Elhassan's opinion because the ALJ evaluated the opinion in accordance with the regulations.

11

Under the SSA regulations applying to applications for benefits filed prior to March 27, 2017[2], medical opinions provided by a treating source are treated differently than medical opinions from non-treating sources.  §§ 404.1527(c)(2), 416.927(c)(2).  A "treating source" is a medical source who, provides, or has provided, the claimant with medical treatment or evaluation, and who has, or has had, an "ongoing treatment relationship" with the claimant.  §§ 404.1527(a)(2), 416.927(a)(2).  An "ongoing treatment relationship" occurs "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition."  §§ 404.1527(a)(2), 416.927(a)(2).  Generally, a physician who has only seen a patient once cannot be considered a treating physician.  *See Yost v. Barnhart*, 79 F. App'x 553, 555 (4th Cir. 2003) (unpublished) ("Dr. Massenberg evaluated Yost on only one occasion. Thus, he is not Yost's treating physician.").

Known as the "treating physician rule," ALJs must give "controlling weight" to a treating source's opinion if that opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence." §§ 404.1527(c)(2), 416.927(c)(2); *see Arakas*, 983 F.3d at 106; SSR 96-2p, 1996 WL 374188 (July 2, 1996).  If an ALJ determines that the treating physician's opinion is not entitled to controlling weight, or in evaluating any other medical opinion in the record, the ALJ must determine the appropriate weight to afford the opinion by considering the factors in § 404.1527(c)(2)–(6), including (1) the treatment or examining relationship; (2) how the medical source supports the opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the medical

---

[2] Because Plaintiff's applications for DIB and SSI were filed on June 20, 2016, ad January 30, 2017, respectively, the regulations in §§ 404.1527(c)(2), 416.927(c)(2) apply.  For claims filed after March 27, 2017, the regulations instruct ALJs to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion."  §§ 404.1520c(a), 416.920c(a).

source is a specialist; and (5) any other factors which tend to support or contradict the medical opinion. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6); *Arakas*, 983 F.3d at 106.

The only reference to Dr. Elhassan in Plaintiff's treatment notes is a note from July 10, 2019, indicating that Dr. Elhassan discontinued Plaintiff's ibuprofen prescription.  R. at 795. Nonetheless, days before, on July 6, 2019, Dr. Elhassan completed a medical source statement consisting of a "check the box" form where she indicated that Plaintiff experienced chronic back and neck pain, and exhibited symptoms of lower back pain, neck pain, shoulder pain, and muscle spasms.  R. at 866.  Dr. Elhassan denoted with a check mark that Plaintiff could rarely lift and carry less than ten pounds, and could only sit, and stand/walk less than two hours in an eight-hour workday.  R. at 866.  Dr. Elhassan also noted that it was medically necessary for Plaintiff to ambulate with a cane or other assistive device, "as needed."  R. at 866.  Finally, Dr. Elhassan noted that Plaintiff would be absent from work four or more days per month as a result of her pain and medical problems.  R. at 866.

The ALJ considered Dr. Elhassan's opinion and concluded the opinion was entitled only "limited weight."  R. at 15.  The ALJ explained,

> [T]his check-the-box form that notes extreme limitations is inconsistent with the other evidence of record.  Specifically, Dr. Elhassan opines that the claimant needs a cane, but the medical evidenced of record documents a normal gait.  Additionally, the medical evidence of record repeatedly noted normal strength and normal neurologic examinations, including negative straight leg raising tests.

R. at 15–16.

At the outset, the Court notes that it is doubtful that Dr. Elhassan should be considered a treating physician under the regulations.  There is only a single reference to Dr. Elhassan in Plaintiff's treatment notes, which simply notes that Dr. Elhassan discontinued Plaintiff's ibuprofen medication.  R. at 795.  The record does not indicate why Dr. Elhassan discontinued Plaintiff's

ibuprofen medication, during what visit Dr. Elhassan did so, or whether Dr. Elhassan examined

Plaintiff at all.  Citing no authority for the proposition, Plaintiff argues that because Dr. Elhassan

is a member of the Bon Secours Medical Group, and numerous providers from the Bon Secours

Medical Group other than Dr. Elhassan treated Plaintiff in the past, then the Court may consider

Dr. Elhassan "a treating physician within the medical group."  ECF No. 20 at 1–2.

Upon this Court's review, there appears to be conflicting decisions around the country

addressing whether a physician within a medical group is considered a "treating physician" when

that physician has little or no treatment or examination relationship with the Plaintiff.  *See Cipolla

v. Colvin*, No. CV 16-2664, 2018 WL 1287872, at *7 n.55 (E.D. Pa. Mar. 13, 2018)  (comparing

cases holding that a physician treating a patient within a practice group share treating physician

status with cases holding otherwise).  Some courts have held that a physician who examined a

plaintiff only once but practices within the same practice group as other physicians that have a

treatment relationship with a plaintiff are considered treating physicians.  *See e.g.*, *Cipolla v.

Colvin*, No. CV 16-2664, 2018 WL 1287872, at *7 (E.D. Pa. Mar. 13, 2018) (holding that

"[p]hysicians treating a patient within a practice share treating physician status with those in the

same practice.");  *Lawson v. Colvin*, 21 F. Supp. 3d 606, 612 (W.D. Va. 2014) (holding a physician

who examined a plaintiff only twice but is part of the same practice group of physicians who

treated plaintiff for years is a treating physician under the regulations).  Contrarily, other courts

have held that a physician who only examines a plaintiff one time is not a treating source despite

being a member of the same practice group as a physician who has a treatment relationship with

the plaintiff.  *Weiler v. Soc. Sec. Admin.*, No. 3:14-1347, 2015 WL 5341939, at *7 (M.D. Tenn.

Sept. 14, 2015) (agreeing with ALJ that a physician who only examined plaintiff one time before

opining as to her limitations could not be a treating physician even though the physician was in

the same group as plaintiff's treating physician and relied on those records to form an opinion), *report and recommendation adopted*, No. 3-14-1347, 2015 WL 5821252 (M.D. Tenn. Oct. 5, 2015); *St. Clair v. Astrue*, No. 5:09CV2736, 2010 WL 3370568, at \*5 (N.D. Ohio Aug. 25, 2010) (finding that "a doctor who has never examined a claimant cannot be considered a treating physician, simply because the doctor practices within the same practice group as claimant's actual treating doctor").

At least one district court in the Fourth Circuit has held that a physician within a practice group who has no significant treatment relationship with a Plaintiff may be considered a treating physician. *Lawson v. Colvin*, 21 F. Supp. 3d 606, 612 (W.D. Va. 2014). In *Lawson*, the Western District of Virginia found that a physician who examined and treated a plaintiff only once prior to completing a medical opinion was a treating physician because the physician was part of a medical group that had been treating the plaintiff for years, and had full access to treatment records from that group. *Id.* However, unlike in this case, in *Lawson*, there was evidence in the record that the physician had at least examined the plaintiff on one occasion prior to providing an opinion. *Id.* Here, there is simply no evidence through treatment notes, or otherwise, that Dr. Elhassan ever examined Plaintiff. Moreover, the regulations state that the Commissioner will not consider a medical source to be a treating source "if [the claimant's] relationship with the source is not based on [the claimant's] medical need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [a] claim for disability." §§ 404.1527(a)(2), 416.927(a)(2). Because there is no evidence that Dr. Elhassan actually treated or even examined Plaintiff, the Court is skeptical that Dr. Elhassan is a treating physician under the regulations. Given the absence of evidence regarding Dr. Elhassan's role in Plaintiff's treatment, the undersigned would find that she is not a treating physician and thus her opinion would not be entitled to controlling weight.

15

Nonetheless, even accepting Plaintiff's argument that Dr. Elhassan is a treating physician, the Court finds that the ALJ properly evaluated her opinion by explaining that Dr. Elhassan's opinion is not well-supported, and is inconsistent with other substantial evidence.  R. at 15–16; *see Arakas*, 983 F.3d at 106.  The ALJ explained that he afforded Dr. Elhassan's opinion limited weight because it noted "extreme limitations" that were not well-supported by a simple a "check-the-box" form that did not cite to clinical or laboratory diagnostic techniques, and was inconsistent with other evidence in the record.  R. at 15.  For example, the ALJ explained that Dr. Elhassan's form was inconsistent because it noted Plaintiff required a cane "as needed" but the evidence in the record demonstrates that Plaintiff had a normal gait.  R. at 15–16.  Further, the ALJ explained that the medical evidence in the record repeatedly noted normal strength, and normal neurological examinations.  R. at 16.

The record supports the ALJ's decision to afford less than controlling weight to Dr. Elhassan's opinion.  As to supportability, although Dr. Elhassan stated that it was medically necessary for Plaintiff to use a cane, "as needed," Dr. Elhassan's own check-the-box form did *not* note that Plaintiff walked with an antalgic or disturbed gait, even though that option was listed on the form.  R. at 866.  Additionally, no physician from the Bon Secours Medical Group (who, by Plaintiff's argument, Dr. Elhassan's opinions are based upon), note that Plaintiff required a cane, or walked with any gait disturbance.  *See e.g.*, R. at 535 (noting that Plaintiff appeared with no distress), 541 (noting that Plaintiff incorporated walking to ease her pain), 545 (noting that Plaintiff appeared with no distress), 567 (noting that Plaintiff appeared with no distress).  Similarly, there are no treatment notes in the record from any of Plaintiff's providers outside Bon Secours who noted that Plaintiff required a cane, or walked with any gait disturbance.  *See e.g.*, R. at 713 (noting that Plaintiff had a normal gait), 720 (same), 724 (same), 727 (same), 734 (same), 740 (same), 822

(same), 825 (same). Accordingly, the record supports the ALJ's conclusion that Dr. Elhassan's opinion was not well-supported.

As for consistency, although Dr. Elhassan opined that Plaintiff could rarely lift less than ten pounds, treatment notes from other physicians with Bon Secours Medical Group demonstrated that Plaintiff had +5/5 strength. *See e.g.*, R. at 535, 539, 543, 545, 549, 557, 628, 631, 635, 638. Other treatment notes from physicians with Bon Secours noted "no weakness appreciated in [Plaintiff's] upper/lower extremities" and that Plaintiff was negative for any weakness. R. at 567, 763, 789, 801. Likewise, no treatment notes from any of Plaintiff's other providers outside Bon Secours expressed that Plaintiff experienced any strength deficits such that she would be limited to rarely lifting less than ten pounds. *See e.g.*, R. at 720 (no spine weakness, no lower extremity weakness), 727 (same), 746 (same), 832 (Plaintiff demonstrated full strength), 849 (same), 852 (same). Thus, the record supports the ALJ's conclusion that Dr. Elhassan's opinion was inconsistent with other substantial evidence in the record.

Additionally, the ALJ's opinion demonstrates that he considered the remaining factors set forth in § 404.1527(c)(2)–(6) and § 416.927 (c)(2)–(6) in evaluating Dr. Elhassan's opinion. As detailed above, the ALJ considered the supportability factor by explaining that Dr. Elhassan's opinion was not well-supported as a simple "check-the-box" opinion, and considered the consistency factor by explaining that Dr. Elhassan's opinion was inconsistent with other evidence in the record. §§ 404.1527(c)(3)–(4), 416.927 (c)(3)–(4). There is no evidence in the record that Dr. Elhassan ever specifically treated or examined the Plaintiff. §§ 404.1527(c)(2), 416.927(c)(2). Additionally, there is no evidence that Dr. Elhassan is a specialist of any sort. §§ 404.1527(c)(5), 416.927(c)(5). Accordingly, the ALJ sufficiently considered Dr. Elhassan's medical opinion and did not err by affording it less than controlling weight.

## VI.  RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 16, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 18, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 20, 2021